In re CONSERVANCY DISTRICT NO. 15
of the State of Oklahoma.

No. 40605.

Supreme Court of Oklahoma.

Nov. 24, 1964.

Rehearing Denied Jan. 19, 1965.

Marvin C. Emerson, Oklahoma City, J. Wilford Hill, Cherokee, for petitioners.

Frank Carter, of Otjen, Carter, Huddleston & Otjen, Enid, for protestants.

BLACKBIRD, Chief Justice.

This appeal involves Conservancy District No. 15, comprised of land in the Wagon Creek Watershed of Alfalfa and Grant Counties. Petitions for the formation of said District were filed in this court in February, 1958, and, in the same month, this court referred same, under the provisions of this State's Conservancy Act (Tit. 82 O.S.1951 and 1961, §§ 531, 532, 541 et seq.) to the District Court of Alfalfa County (hereinafter referred to as the "trial court") to be heard and determined. In April of that year that court entered its order for the hearing of the matter on May 26, 1958; and the requisite statutory notice thereof was given. After a hearing on the scheduled date, the trial court entered its order establishing the Conservancy District, with its principal place of business at Jet, Oklahoma. In June, 1958, said court appointed the District's first Board of Directors, but various replacements occurred in the Board's membership over the next more than four years, and the Board's application for approval of a work plan—completed in March, 1961—was not filed in the trial court until February 4, 1963. That same day, the court set the application for hearing on March 18, 1963.

On March 18, 1963, protests to the approval of the plan were filed on behalf of some 130 owners of approximately 20,000 acres of land, and, at the Board's request, the Court continued the hearing until March 27, 1963, in order to give it an opportunity to check the protests and the ownership and location of the land they purported to represent. The court agreed with the attorney for the protestants that any other owners who desired might file additional protests before the Court was to consider the matter again, but nothing was said in court that day about the right of any owners, who had already filed protests, to withdraw them during the interim.

Upon resumption of the hearing on March 27th, some additional protests were presented, but counsel for the Board also presented signed withdrawals of some protests that had previously been filed. After the parties had stipulated that the District contained only 11,480 acres, and it appeared that some of the protests, as well as some of the withdrawals, represented land outside the District (but in the watershed of Wagon Creek) it was agreed that these should be taken out of consideration; and the court declared a short recess in the hearing, for that purpose.

When the hearing was resumed later the same day, it appeared that if the protest withdrawals that the Board had obtained since the hearing was first scheduled, were filed and considered, the total number of acres represented by the remainder of the protests was some 460 acres less than 50% of the acreage included in the District. Over the objections of the protestants, the court allowed said withdrawals to be introduced in evidence, and ruled that the protests remaining were insufficient to obtain

dissolution of the District, as contemplated in Tit. 82 O.S.1951 and 1961, § 565.

Thereupon, the court heard the testimony of witnesses in support of the plan, including that of Mr. Fred Gray, Watershed Planning Engineer for the Soil Conservation Service. It was emphasized, in the cross-examination of some of these witnesses, that the work plan was adopted by the Board as early as May, 1961, but none could explain why it was not filed with the Court until February, 1963. Mr. Metcalf, the Board's President, testified that in so far as he was aware, there had been no change, or re-examination, of the plan since the Board adopted it. Mr. Gray testified, among other things, that he had had no occasion to review the probable cost of the structures involved in the plan since its adoption. The tenor of all the testimony, however, (hereinafter referred to in more detail) was that putting the work plan into effect would be both feasible and beneficial to the area. Protestants offered no evidence to the contrary.

In its order approving the plan, the court specifically found that it "and specifications filed herein, are for the best interest of the owners of the land * * *" in the Conservancy District.

From said order and judgment, protestants have perfected the present appeal. We will continue our reference to their adversary as the "Board".

In protestants' first argument for reversal, they contend that the trial court erred in permitting the filing of withdrawals of protests "after the final date set for (filing) such protests." They cite the statute, section 565 (Tit. 82, supra) as follows:

"All objections to said plan shall be in writing and be filed with said court clerk *on or before the date of hearing fixed in said notice*, provided, however, that the court, for good cause shown, shall have authority to extend the time for filing said objections in its discretion. If *at said date* the owners of a majority of the area of land in the said district shall file a protest and objection to the plan as a whole, then the court shall order an assessment * * * (which shall not be) more than twenty cents (20¢) per acre on agricultural lands. Upon the collection of said assessments the court shall order said district dissolved." (Emphasis supplied)

Protestants call our attention to the fact that there is no provision in the quoted statute for the withdrawal of any protest or objection. They also call our attention to the fact that on March 18, 1963, "the date of hearing fixed" in the Board's Notice, the Court, though it accorded protestants the right to file additional protests during the period of the hearing's continuance until March 27th, thereafter, no permission was given for the withdrawal of protests during that interim. They point out that if the tally of protesting landowners, as compared with those not protesting, had been made as of March 18th (as protestants say they had every right to assume that it would be), the Court would have been required, by the quoted statute, to have ordered the District dissolved.

■ Protestants' argument does not give the comprehensive effect, we think it should, to the quoted statute. Despite their counsel's present attempt to gain support for their position from the fact that the statute contains no mention of protest withdrawals, we notice that in his opening statement on March 27th, supra, he tacitly assented to withdrawals being considered, along with protests, and to the acreage they represented being deducted from that represented by protests, in determining whether the owners of a majority of the district's land area were protesting the plan. We think the law contemplates—and it must be inferred therefrom—that if the period for filing protests is validly extended, then, by the same token, the period for withdrawals of protests is also extended; and by the plain wording of the above quoted provision, it is the date, to

which the extension has been granted, that the determinative, net, tally of protests is to be made. We therefore find no error, under the circumstances, in the action of the trial court in allowing the protest withdrawals to be presented as late as March 27, 1963, and, in its consideration of said withdrawals in arriving at its determination that the protestants did not represent a majority "of the area of land" in the District.

Under their Proposition II, protestants advance various reasons why they contend the trial court should have either rejected the Plan or referred it back to the Board for re-study.

■ As their first reason, they say that the Plan "was not filed as contemplated by law"; and, in support thereof, they cite the wording of section 565, supra, that "[u]pon the completion of such plan, the Board shall file a copy of the plan with the court clerk of the court having jurisdiction of such district * * * (etc.)". They argue that:

"The normal interpretation of the phrase 'upon the completion of such plan' would require at least that within a very few days of the completion of the Plan it should have been filed, so that it could have been inspected by the parties interested, and the hearing should have been held * * * immediately after it had been completed and adopted by the Board."

The Board argues, on the other hand, that if the Legislature had intended that the Plan be filed with the court clerk immediately upon, or within a specific period after its completion, it would have written such a requirement into the statute. The Board says that in the absence of such a provision. " * * * it can safely be argued that the Board * * * could file the * * * plan * * * as soon as they thought it would be to the best interests of the District." We are inclined to agree. The statute must be applied as written, without the addition thereto (by this court) of a specific time restriction. We there-

fore hold that the period of time which elapsed between the completion of the Plan and its filing, does not, in the present case, present a valid ground for reversal of the judgment appealed from.

. Another reason protestants say that the trial court should have rejected the plan, or referred it back to the Board for re-study, is that there is no evidence of its economic feasibility. In addition to the other parts of his testimony hereinbefore noted, they refer to Mr. Gray's testimony that the ratio of estimated benefits from, to the cost of, dams, and other structures, contemplated in the Plan is 1.7 to 1, and to other testimony by him that construction costs and the market value of land had increased since the Plan was adopted in May, 1961. They say there is no evidence that the cited ratio of benefits to costs, calculated then, was still valid in 1963, when the court considered the Plan. They also attempt to contradict the figure of $166,300, set forth in the Plan as the value of the land easements, and, by multiplying the 1571 acres that will be covered by sediment, and flood water, pools, by $125.00 (which they say was the lowest price per acre in 1960) they attempt to show that the actual easement cost will be 20% more than estimated, or a total of $196,250.

■ In another argument, protestants say, in substance, that the area claimed to be benefited by putting the plan into effect "is out of all proportion to the total acreage of the watershed * * *", and, in support of this contention, they cite Mr. Gray's testimony that only 10% of 36,900 acres in the Wagon Creek watershed will be benefited by the Plan's execution. We are not impressed by protestants argument and are not inclined to accept them as a substitute for evidence. While it may be that costs, and land and crop values, were not the same in 1963, as they were in 1960, there is no proof in the record to dispute the opinion of the Board (testified to at the trial) that the increase in the value of the Plan's benefits by the later year

·would "parallel" any increases in the cost ·of its execution. Furthermore, as the Board points out, rather than the District's ·having to bear the entire structural cost ·of the Plan (estimated therein to be $166,-300, as aforesaid) the District's share of ·such cost will be only 30% of that amount —the other 70% being defrayed by fed-·eral funds. In Ohio, from whose Conserv-·ancy Act the Oklahoma Act is·said to have been patterned, it has been held that the ·objectors to a conservancy district's plan of contemplated improvements have the ·burden of proving that the improvements ·are unwarranted. See Lebold v. Musk-ingum Watershed Conservancy District, 50 Ohio App. 476, 198 N.E. 583. There ·the court said:

> "The presumption is that the board of directors adopted a plan of improve-ment, not out of caprice, but adequate and necessary to accomplish the ends contemplated. That presumption the conservancy court *should* and did *re-spect.*" (Emphasis supplied).

In a case like the present one, where the protestants of such a Plan introduce no evidence· to show that it is not economi-cally feasible, but depend for ·support of their arguments on speculative assumptions they ask this court to make, we think any doubts as to the matter must, in view of the considerations above indicated, be re-solved in favor of the Board and its Plan.

Protestants' argument that the Plan is misleading because it includes land treat-ment measures that could be used without such a plan, at no cost to the District, does not stand factual scrutiny in view of the Board's demonstration that the cost of such measures is not included in the estimated cost of the plan.

As, in our opinion, the arguments ad-vanced by the protestants establish no valid ground 'for reversing it, the trial court's judgment is hereby affirmed.

HALLEY, V. C. J., and DAVISON, JOHNSON, WILLIAMS, JACKSON, IRWIN and BERRY, JJ., concur.